Chancellor Mathews
afterwards delivered the decree of the court.
The first and most material point in this cause is, whether the division of the estate by the executors of J. Drayton, was such an assent by the present complainants, as executors, to the legacy of G. Drayton, as will extinguish any right they might- have had under different circumstances, to that relief they have prayed for by their bill ? The second point is, how far, if at all, they are liable for any act done by them to the prejudice of the rights of the creditors and other legatees of J. Drayton ? It appeal’s on the face of the proceedings that the executors ánd complainants Charles and T. Drayton, and the defendant G. Drayton, in the year 1779, agreed to make a division of their testator’s estate, conformably to the dispositions pointed out by his will, for the reasons by them assigned, previous to their having ascertained or paid their testator’s debts and other legacies; on a mutual understanding that each was to be responsible for his proportion of debts and legacies* Glen Drayton having thug drawn out his proportion of his father’s estate, and being *563 in full possession thereof, contracts considerable debts; they have been prosecuted to judgment and execution, and even levies made on some of them; but further proceedings on them have been enjoined by this court, till the hearing of this cause. As to the first question, it being a novel one, great ingenuity has been displayed by the counsel in their arguments on it; and they have referred to a vast variety of cases from the books, for the purpose of establishing certain great standing principles. But no case has been, nor do we think there is any which can be assimilated to the present, which has received a Solemn adjudication. It has therefore been necessary for us to trace this truly important question into all its ramifications with great minuteness, and to decide with caution. We already foresee that the conduct of the present complainants, is not alone implicated in the present question, for we have good reason to believe that the same has been the conduct of other executors similarly circumstanced. However, our duty confines us simply to the case before us; and the rules of law, and not policy, must be our guide. There are few principles of law better settled than this: that an executor assenting to, and the legatee being put in possession of his legacy, and alienating the same, it never can be followed as assets of the testator into the hands of the purchaser. But it is contended, that the legacy which went into the hands of Glen Drayton, not having been disposed of by him, and being still in his possession, is in its essence the same as it originally was, and is subject to that legal lien which was attached to it by the testator’s will, viz : — .the payment of his debts and legacies in the first instance. And it wTas further contended, that as an executor, G. Dray-ton had a right to possess himself of his own legacy without the consent of his co-executors. On the other hand it has been contended, that although there has been no formal alienation by G. Drayton himself, yet the law has made such a disposition of this property, as will as effectually wrest it out of his hands, as if he had disposed of it in ever so formal a manner; for the division of the testator’s estate, was an assent of Charles Drayton and Thomas *564 Drayton, two of the executors, to the legacy ofG. Dray-ton; and his possessing himself thereof, enabled him to obtain a credit on this visible property, and made it liable to the judgments and executions of his own creditors, and which have created sucha legal lien thereon as they cannot he divested of at this time; provided there are assets sufficient of the testator in the hands of those executors who thus assented, to pay his debts and legatees: and that these are sufficient, is not denied. That as to his being an executor himself, and having a right independent of the assent of his co-executors to possess himself of his legacy, that cannot avail the complainants in this case, because they were privy, and assenting to his taking his legacy. It is with reluctance we pronounce the latter argument to be well founded, and must prevail: we say with reluctance, because we think the case of the complainants a very hard one; they must become severe sufferers by their misplaced confidence, and in whom ? In a brother. But as it is their misfortune to have done so, they are bound to abide the consequences; and however we may regret the inconvenience resulting to them, a superior duty calls on us to say, that by the division of their testator’s estate under their immediate sanction, and their permitting G. Drayton to possess himself of his part thereof, in the unlimited and uncontrolled manner they did, was to every legal intent such an assent on their part as must subject them to all the disadvantages growing out of such incautious and untenable conduct.' — In the exercise of the office of an executor, great caution ought to be used; for the law subjects them to such penalties for small deviations from those rules, it prescribes for their conduct, as renders it obligatory on them to act up to its rigid rules, if they wish to avoid after inconveniences. The predicament in which the present complainants stand, verifies the observation; for had they done what the law directed them to do, which was to pay the debts of their testator, before they proceeded to a division of his estate; or if after a division, they had entered into proper mutual engagements for so doing, and made it an act of general notoriety, much might have *565 been done in their favor; but on the contrary to suffer G. Drayton to possess anil incumber that part oí" the es-tale he was entitled to in the manner he did, was a degree of negligence, such laches on their part as never can entitle them to that relief, merely as.co-exmttors or co-ie-gatees, which they come here to ask for, to the prejudice of bona fide judgment creditors of Glen Drayton, who, we must presume, had trusted him on the faith of a largo visible, estate-, which for ought they could come to any legal knowledge of, was unincumbered with any other than his own debts.
Our opinion on this point is, that the division of J» Drayton’s estate by his executors, was a reciprocal assent of the executors to their taking their several legacies; and that the capacity of the executor sunk from the moment of his receiving his legacy into that of a simple legatee, uncontrollable by the co-executors: and in no other point of view can it be taken, for the assent of at least one executor is indispensable to the acceptance of a legatee, and Ms peaceable enjoyment of his legacy; for should an executor legatee take his own legacy before the debts of his testator are satisfied, might not the other executors, by legal means, compel him to restore the assets of the testator, until his debts are fully ascertained and paid ? We think they might, in this case, G. Drayton was for many years in the peaceable enjoyment of his legacy, without any act done by the other executors to intercept him in such his possession. We shall next consider the effects of such possession. It is a well known rule in law. that if a man assigns his property to a creditor for valuable consideration, anil the creditor permits him to remain in possession of it, and he afterwards claims a credit on that property, and the creditor is ignorant of such assignment, that the subsequent creditor shall be preferred in the payment of his debt. So here, G. Drayton having obtained a credit on the property in his possession, his creditors unapprised of any other incumbrance, acquire a legal lien thereon by judgment and execution. They certainly cannot, upon any equitable principle, be divested of such lien by the present com *566 plainants, merely to save them harmless, for an act of imprudence committed by them to the injury ofunoffend-ing bona fide creditors, whose rights are in this court, always favored and protected. As to the secpnd point, it *8 imnecessary for us to take any particular notice of the claims of G. Drayton’s creditors, as to his real estate; as it is too well understood, that the real estate which came to him by his father was not under the control of his executor, they can therefore have done no act which exempts it from the payment of their testator’s debts and legacies. G. Drayton’s creditors can consequently come in for no greater interest in that part of his estate than he himself had; and as it was liable in the first instance in his hands, for the payment of his testator’s debts and legacies, so must it continue under the judgments obtained by his creditors. We must also consider his part of the personal estate as liable for its proportion of the legacies of the minor children; because the testator has by his will expressly charged the whole of his real and personal estate with the payment of his legacies; which will, being recorded in the secretary’s office, (where all wills were formerly deposited,) it was incumbent on G. Dray-ton’s creditors, as he derived all his estate from his father, to see whether he possessed it, subject to any conditions or limitations; and if they did not, they must blame themselves for the neglect; and because the executors complainants cannot be charged with any improper or Unnecessary delay or neglect, in not raising the legacies of the daughters before G. Drayton had incumbered his part of the estate, for the daughters were not entitled ta their legacies until 21, or day of marriage, a contingen.cy, which might or might not happen; but as they are' both married, and application has been lately made to this court to have the legacies raised, it has been so decreed; and lastly, because as the executors who are considered as trustees for the legatees, took the whole estate • real and personal, burihened with the trust created by testator’s will, the creditors of Glen Drayton then standing in his place, must take the personal estate subject to the same trust, and all the equity it was liable to in his *567 hands. As to G. Drayton’s purchase at the sale of his testator’s estate, we consider it in the same light as that of any other individual; there is no law which prohibits executors purchasing (without fraud,) any property of his testator at open and public sale; and if Ms co-executors have been so incautious as not to oblige Mm to give the security required by the advertisement, but have suffered him to possess the purchased property for a series of years as bis own, and have even been privy to his sale of a part of it, and quietly acquiesced until executions had attached upon what was left; it is such an inexcusable laches on their part as this court never can countenance. They have lost that equity which they bad, and must submit to the consequences; although if this contest had been immediately between the creditors of John Dray-ton, and those of G. Drayton, and the executors of J. Drayton were insolvent, this court would support the claim of J. Drayton’s creditors, who undoubtedly would have a prior and superior equity to those of G. Drayton’s. It is therefore ordered, that the report which has been made by the master in this case, be referred back to him, and that he do state the same conformable to the terms of this decretal order.